IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOSHUA S.,[1]

Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant.

Case No. 6:25-cv-01364-AP

**OPINION AND ORDER**

POTTER, United States Magistrate Judge:

Plaintiff Joshua S. brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g).

Plaintiff alleges that the Administrative Law Judge (ALJ) erred by improperly evaluating medical opinions and improperly assessing Plaintiff's subjective symptom testimony. For the reasons outlined below, the Commissioner's decision is REVERSED and REMANDED.

**PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiff applied for DIB on June 19, 2020, alleging disability since January 15, 2017. Tr. 147. The claim was denied initially and upon reconsideration. Tr. 175, 209. Plaintiff requested a

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case and any immediate family members of that party.

hearing before an ALJ and appeared before the Honorable Jordan Garelick on September 7, 2023. Tr. 38-70. ALJ Garelick determined that Plaintiff was not disabled under the Social Security Act. Tr. 137. After review, the Appeals Council remanded the case, finding that the ALJ had failed to evaluate medical opinions and that the jobs identified were not consistent with Plaintiff's residual functional capacity (RFC). Tr. 238-40.

Plaintiff then appeared before the Honorable Shawn Bozarth on October 15, 2024. Tr. 71-96. In a written decision dated October 31, 2024, ALJ Bozarth again found that Plaintiff was not disabled under the Social Security Act. Tr. 17-30. Plaintiff sought review from the Appeals Council; the Appeals Council declined review. Tr. 1. Plaintiff then filed this action for judicial review.

As of December 31, 2023, the date that Plaintiff last met the insured status requirements, Plaintiff was 39 years old. *See* Tr. 147. Plaintiff alleges disability due to post-traumatic stress disorder (PTSD), anxiety, major depressive disorder, and restless leg syndrome. Tr. 147. Plaintiff has an associate's degree and has previous work experience as a records clerk, employment specialist, case manager, and military police officer. Tr. 66-67.

**STANDARD OF REVIEW**

When reviewing the decision of the ALJ, district courts view questions of law de novo. *Obrien v. Bisignano*, 142 F.4th 687, 693 (9th Cir. 2025). But when there is no legal error, the denial of benefits will only be overturned if the ALJ's decision "is not supported by substantial evidence." *Id.* (internal quotation and citation omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587

U.S. 97, 102 (2019) (citation omitted). This is not a high bar; substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). The court may not substitute its judgment for that of the ALJ when the evidence could support either affirming or reversing the ALJ's decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

**DISCUSSION**

A person is disabled when they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). When determining if someone seeking benefits is disabled, the ALJ applies a "five-step sequential evaluation process." 20 C.F.R. § 404.1520(a)(4). If at any point in the five-step process the ALJ determines that the person is or is not disabled, the process stops. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 787 n.1 (9th Cir. 2022).

The first step looks at whether the claimant is doing "substantial gainful [work] activity;" if they are, they are not disabled. 20 C.F.R. § 404.1520(a)(4)(i). The second step focuses on the claimant's physical or medical impairment; a claimant is not disabled unless they can show a severe impairment that lasts at least a year or is expected to result in death. 20 C.F.R. § 404.1520(a)(4)(ii). At the third step, the ALJ asks whether the severity of the impairment meets or equals one of the impairments listed by the Commissioner of Social Security. *Id.* § 404.1520(a)(4)(iii). If the impairment is equivalent to one of the listed impairments, the claimant is presumptively disabled. *Id.* If not, the ALJ proceeds to the fourth step. *Id.* §

404.1520(a)(4)(iv). Prior to proceeding to steps four and five, the ALJ must determine the residual function capacity. 20 C.F.R. § 404.1520(e). This analysis determines what a claimant can do on a sustained basis despite their limitations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Then, the fourth step requires an analysis of the claimant's part work and residual functioning; if the claimant can still do their past relevant work, they are not disabled. *Id.* § 404.1520(a)(4)(iv). At the fifth step, the question is whether given the claimant's present abilities, there is another type of job they can do; if the claimant can do another job, they are not disabled. *Id.* § 404.1520(a)(4)(v).

**I. Medical Opinions**

Plaintiff first argues that the ALJ failed to properly evaluate the medical opinion evidence. Here, Plaintiff focuses on how the medical experts assessed Plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors. Pl.'s Br. 15-19. Plaintiff also argues that the ALJ failed to evaluate Dr. Mastikian's opinion. Tr. 20-24.

When evaluating medical evidence, the ALJ must look at the persuasiveness of the medical opinion with a focus on the "'supportability' and 'consistency'" of the findings. *Woods*, 32 F.4th at 791 (citing 20 C.F.R. § 404.1520c(a)). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'" *Id.* at 791–92 (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent ... with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (citing 20 C.F.R. § 404.1520c(c)(2)).

### *A. Plaintiff's ability to accept instructions and respond appropriately to criticism*

In January 2019, Kenneth Littlefield, Psy.D. performed a psychological exam with a mental status exam. Tr. 832-35. Dr. Littlefield opined that Plaintiff "appears likely to need support to be able to respond to criticism from supervisors consistently." Tr. 837. He also opined that Plaintiff "may need supervision and support to consistently get along with coworkers." Tr. 837.

At the initial review level, reviewing consultant Stacy Koutrakos, Psy.D. found that Plaintiff is moderately limited in the ability to accept instructions and respond appropriately to criticism from supervisors. Tr. 171. At reconsideration, reviewing consultant Christal Janssen, Psy.D. found the same. Tr. 204-05.

The ALJ found the reviewing consultants' findings "somewhat" persuasive as they were supported by their discussion of the record and consistent with Dr. Littlefield's opinion and the rest of the medical evidence. Tr. 28. Although he stated that the opinions are "somewhat" persuasive, the ALJ did not identify any part of the psychiatric reviewing consultants' opinions that he rejected. Similarly, the ALJ found Dr. Littlefield's opinion persuasive.

Despite the conclusions that Plaintiff was limited in his ability to interact with others and would need support to manage criticism, the ALJ found that Plaintiff has only a moderate limitation in interacting with others. Tr. 22. He noted Plaintiff's report "that he was fired in 2018 after a verbal altercation with a boss" but also noted that Plaintiff generally was cooperative and friendly on examination by medical providers. Tr. 22. In crafting the RFC, the ALJ limited

Plaintiff to "occasional[] interact[ion] with supervisors, co-workers, and the public."[2] Tr. 23. Despite the three persuasive medical opinions that found Plaintiff limited in his ability to accept instructions and respond appropriately to supervisors, the ALJ does not address this limitation or incorporate it into Plaintiff's RFC.

The ALJ cites to Plaintiff's "normal examinations with only minor fluctuations in mood and temper," finding they "do not support the full extent of [Plaintiff's] allegations." Tr. 27. Plaintiff most often presented as pleasant and cooperative at medical appointments. *See, e.g.*, Tr. 834, 861, 882, 904, 979, 984, 995, 1010, 1034, 1048, 1106, 1127, 1134, 1146, 1161, 1173, 1190, 1236, 1253, 1327, 1338, 1365, 1370, 1675. However, even at medical appointments, Plaintiff's inability to respond appropriately to any perceived slight is apparent. At one appointment in June 2021, Plaintiff abruptly ended the session when the provider attempted to explain the PTSD evaluation process. Tr. 1116. Before ending the session, Plaintiff became very angry and began swearing at the provider. Tr. 1116. When the supervisor attempted to follow-up with Plaintiff, he again became increasingly agitated and hung up the phone. Tr. 1193.

These were not the only instances of Plaintiff becoming agitated and angry towards medical providers. When a therapist suggested he begin in-person sessions, he again abruptly ended the session. Tr. 1156. He hung up on a provider when they called to tell him that he had tested positive for COVID. Tr. 1706. In March 2023, he was "quite frustrated and irritable" with his medication management provider, asking that the provider "just send me a medication and

---

[2] The VE testified that an individual with Plaintiff's RFC could work as a router, marker or electronics worker. Tr. 94. But the VE also testified that a person who needed extra support in receiving criticism from supervisors would be unable to maintain employment. Tr. 95.

stop talking to me." Tr. 1777. *See also* Tr. 1152, 1167, 1262, 1362, 1702, 1777, 1786, 1787, 1810.

The ALJ erred by failing to incorporate limitations in medical opinions that he found persuasive into the RFC or failing to address why he did not adopt those limitations. The Court finds that this error is not harmless.

***B. Dr. Mastikian's Evaluation***

Plaintiff argues that the ALJ also failed to assess Dr. Mastikian's medical opinion.

Dr. Mastikian performed an evaluation of Plaintiff's PTSD in January 2019 as part of Plaintiff's application for VA disability benefits. Tr. 689-99. Dr. Mastikian found that Plaintiff had "[o]ccupational and social impairment with deficiencies in most areas." Tr. 692. Dr. Mastikian found that there was "more than enough evidence to support the presence of a progressively-worsening PTSD condition." Tr. 697. Dr. Mastikian opined that Plaintiff "is incapable of multitasking, thinking logically and controlling his impulses once his PTSD becomes triggered which places him at a high risk for failure and danger if placed in occupational settings at this time." Tr. 698.

Defendant concedes that the ALJ did not explicitly address Dr. Mastikian's evaluation but argues that any error here is harmless. Def.'s Br. 5-6. The Court agrees.

Dr. Mastikian's opinion focused on Plaintiff's limitations when his PTSD is triggered. Tr. 698. The ALJ acknowledged that providers noted "that the bulk, 90 percent, of the claimant's functional issues arose from PTSD." Tr. 26. In crafting the RFC, the ALJ considered "the tendency for trauma-based symptoms to be triggered by stress," and limited Plaintiff "to the performance of simple, routine tasks in a relatively low stress environment with limited changes

or decision-making demands … with only occasional interaction to avoid exacerbating the claimant's condition." Tr. 27.

Although the ALJ did not address Dr. Mastikian's evaluation specifically, the ALJ's opinion demonstrates that he did take the evaluation into account when discussing Plaintiff's limitations and crafting the RFC. Any error here is harmless. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) ("Even when the ALJ commits legal error, we uphold the decision where that error is harmless. . . . An error is harmless if it is 'inconsequential to the ultimate nondisability determination.'") (quoting *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)).

## II. Plaintiff's Subjective Symptom Testimony

Plaintiff also argues that the ALJ erred in assessing Plaintiff's subjective statements, specifically regarding "his known avoidant behaviors, and trauma reactions, particularly when exacerbated by social stressors." Pl.'s Br. 34.

"An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). The ALJ must first determine "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal citations and quotations omitted). If this first step is satisfied, and the ALJ finds no evidence of malingering, the ALJ then must determine the intensity and persistence of symptoms by considering "all of the available evidence from . . . medical sources and nonmedical sources." 20 C.F.R. § 404.1529(c)(1). "[T]he ALJ can reject the claimant's testimony about the severity of [their] symptoms *only* by offering specific, clear and

convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (emphasis added) (internal quotation and citation omitted). Specific, clear and convincing reasons are those which "identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

Plaintiff testified that he isolates himself so that he does not have to deal with other people. Tr. 79. He described "extreme agitation and irritation issues." Tr. 79. Plaintiff reported that his PTSD makes it difficult for him to be around people and to control his emotions. Tr. 573. He reported that it confines him to his house. Tr. 532. He reported that most people anger him and he therefore associates with as few people as possible. Tr. 537. Plaintiff reported that he is constantly on high alert. Tr. 574.

The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 24. Specifically, the ALJ found that Plaintiff's subjective symptom testimony was inconsistent with "normal examinations with only minor fluctuations in mood and temper." Tr. 27. The ALJ also found that Plaintiff's conditions improved with medications and treatment. Tr. 27. Finally, the ALJ relied on Plaintiff's relatively conservative treatment for his mental health diagnoses. Tr. 21-27.

As noted above, the ALJ relied heavily on medical providers' notes that Plaintiff "was appropriately groomed and cooperative, and demonstrated good impulse control, eye contact, and attention span." Tr. 27. But the ALJ's assessment that Plaintiff showed "only minor fluctuations in mood and temper" is not supported by substantial evidence. Medical providers

described his extreme agitation for generally minor frustrations. Tr. 1116, 1152, 1156, 1167, 1193, 1217, 1262, 1362, 1702, 1777, 1786, 1787, 1810. Providers' notes indicate that this agitation is present in his everyday life as well. In October 2020, Plaintiff was stable on medications with occasional episodes of anger that bordered on rage. Tr. 1050. He told the provider that he does not act on that rage because he does not want to do damage or scare his family. Tr. 1050. Plaintiff reported an angry encounter at Winco in February 2021 after a misunderstanding with a cashier. Tr. 1033. In April 2021, his irritability was so significant that his partner asked him to leave the home for a time period. Tr. 1256. In May 2021, Plaintiff reported to his medical providers that he was experiencing angry outbursts every other day. Tr. 1235. In July 2021, Plaintiff described a "big anger outburst" when he missed two days of medications. Tr. 1189. He also described two major blowups with his stepson and told the provider that he wished he could control his anger better. Tr. 1105. He told providers in August 2021 that he had had a "meltdown" the week prior but had since recovered. Tr. 1174. Plaintiff reported feeling "way more irritable" in December 2021. In February 2022, Plaintiff reported that his mood had been "pretty bad the last month." Tr. 1337. He described increased anger, resulting in him punching walls and yelling. Tr. 1337. He had difficulty controlling his anger during racket ball. Tr. 1337. The ALJ's finding that Plaintiff's subjective symptom testimony is inconsistent with the medical record is not supported by substantial evidence.

The ALJ also cited to Plaintiff's improvement with treatment. Tr. 27. However, the ALJ's finding here does not take into account the normal waxing and waning of symptoms, especially for mental health diagnoses. *Garrison*, 759 F.3d at 1017. In spring 2021, Plaintiff was experiencing significant anger daily and asked providers to increase his medications. Tr. 1235.

When his medications were increased, Plaintiff then reported that he was less irritable due to the increase. Tr. 1232. But less than a month later, Plaintiff had a significant outburst at the medical providers when they attempted to evaluate his PTSD symptoms. Tr. 1193. And Plaintiff continued to report "big anger outburst[s]" and extreme agitation. Tr. 1189. By December 2021, Plaintiff was feeling "way more irritable." Tr. 1346. This led to the increased anger, punching, and yelling that Plaintiff described in February 2022. Tr. 1337. Then, in March 2022, Plaintiff reported that his irritability was better. Tr. 1325. But again, that minor improvement did not last. *See, e.g.*, Tr. 1775, 1777, 1779, 1782, 1786.

Finally, the ALJ appears to rely on Plaintiff's failure to follow treatment. However, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)); *see also Garrison*, 759 F.3d at 1018 n. 24 ("we do not punish the mentally ill for occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions."). To the extent that Plaintiff failed to follow treatment recommendations or only engaged in conservative treatment, the record demonstrates that this was because of his PTSD and other diagnoses. Plaintiff discussed with his medical provider that he had made several attempts at therapy, but then he would stop because he became upset with the provider. Tr. 864. The provider noted that this avoidance is a feature of PTSD. Tr. 864. Plaintiff described to providers that he was hesitant to proceed with therapy given his frustrations and concerns. Tr. 1217. Plaintiff was upset about not making progress in therapy but

at the same time he repeatedly asked to change providers and hung up on providers at the slightest disagreement. Tr. 1361, 1362.

The ALJ erred by failing to provide clear and convincing reasons for discounting Plaintiff's subjective symptom testimony.

## CONCLUSION

The Commissioner's decision is REVERSED and REMANDED for further administrative proceedings to reevaluate the medical opinions and subjective symptom testimony and reassess the RFC.

IT IS SO ORDERED.

DATED this 29th day of September, 2026.

/s/Amy E. Potter
Amy E. Potter
United States Magistrate Judge